IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RON GROUP, LLC d/b/a BLUE SKY SPECIALTY PHARMACY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACT. NO. 2:20-cv-1038-ECM [WO] |
| STEPHANIE MCGEE AZAR, in her official capacity as Commissioner of the Alabama Medicaid Agency, ) ) ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Plaintiff Ron Group, LLC d/b/a Blue Sky Specialty Pharmacy's ("Plaintiff," "Ron Group," or "Blue Sky"), Motion for Preliminary Injunction, (doc. 30), wherein Blue Sky seeks to enjoin the Commissioner of the Alabama Medicaid Agency, Stephanie McGee Azar ("Defendant" or "Commissioner"), from recouping any portion of Blue Sky's Medicaid claims before a trial on the merits. Blue Sky asserts that, while the Commissioner had previously agreed to pause her recoupment efforts after this litigation was filed, the Commissioner recently informed Blue Sky of her intent to alter the status quo and resume recoupment beginning in December 2021.

Blue Sky filed this lawsuit on December 15, 2020. (Doc. 1). In its amended complaint, (doc. 24), Blue Sky alleges that the Commissioner violated Blue Sky's constitutional rights in her efforts to hold Blue Sky liable for the debt of another Medicaid

provider, HemaCare Plus, LLC ("HemaCare"), without giving Blue Sky prior notice and an opportunity to defend itself.  Specifically, Blue Sky brings claims against the Commissioner for deprivation of procedural due process in violation of the Fourteenth Amendment (Count 1); unreasonable seizure in violation of the Fourth Amendment (Count 2); taking Blue Sky's property for public use without just compensation in violation of the Fifth Amendment's Takings Clause (Count 3); and an unconstitutional exaction under the Fifth Amendment (Count 4).[1]  Blue Sky seeks declaratory and injunctive relief as well as attorney's fees.

Blue Sky's motion is fully briefed, and the Court held a hearing on the motion on November 17, 2021.  Additionally, on November 16, 2021, Blue Sky filed a motion *in limine* seeking to strike and exclude consideration of settlement discussions referenced in the Commissioner's brief and evidentiary submissions. (Doc. 36).  Because Blue Sky has demonstrated a likelihood of success on the merits of its due process claim, a likelihood of irreparable injury in the absence of an injunction, and that the equities weigh in its favor, Blue Sky's motion for preliminary injunction (doc. 30) is due to be GRANTED.  Additionally, for the reasons stated at the November 17, 2021 hearing, Blue Sky's motion *in limine* (doc. 36) is due to be GRANTED to the extent stated at the hearing.

---

[1] Counts 5–7 contain requests for a declaratory judgment, preliminary injunction, and permanent injunction, respectively.  However, these are not causes of action but rather requests for relief.

2

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  FACTS

"When ruling on a preliminary injunction, 'all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true.'" *Alabama v. U.S. Dep't of Com.*, 2021 WL 2668810, at *1 (M.D. Ala. June 29, 2021) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).  "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).[2]

The relevant regulatory and factual background is set forth in the Court's Memorandum Opinion and Order denying the Commissioner's motion to dismiss, (doc. 38 at 4–10), and the Court will not repeat it here.  Evidence submitted by the parties in briefing

---

[2] In briefing and arguing Blue Sky's motion for preliminary injunction, both parties relied on affidavits rather than live testimony.

Blue Sky's motion for preliminary injunction reveals the following additional relevant facts. On June 12, 2020, the Alabama Medicaid Agency transferred its recoupment from HemaCare to Blue Sky after Medicaid determined Blue Sky was responsible for Medicaid's prior overpayments to HemaCare. (Doc. 32-2 at 12, paras. 50–51). However, there is no evidence that Medicaid informed Blue Sky of this decision and the basis for it. On June 19, 2020, Medicaid recouped $309,130.53 from Ron Group d/b/a HemaCare Plus. (Doc. 32-2 at 137). On July 3, 2020, Medicaid recouped $216,469.42 from Ron Group d/b/a HemaCare Plus. (*Id.*). On July 7, 2020, Medicaid approved Ron Group's request to change its d/b/a name to Blue Sky. (*Id.*, para. 1 n.3). From July 17, 2020, through January 1, 2021, Medicaid recouped various amounts from Blue Sky on a biweekly basis. (*Id.* at 137). In total, the Commissioner has recouped a net total of $1,174,448.75 from Blue Sky's clean claims.

After this lawsuit was filed, Medicaid agreed to pause recoupment against Blue Sky while the parties attempted to resolve the matter. (Doc. 30-5 at 3). In a letter dated September 7, 2021, (*id.* at 2), Medicaid informed Blue Sky that because "efforts to resolve this matter have ceased, Medicaid will resume recoupment beginning with the second check write in October," (*id.* at 3). Due to a delay in that letter being postmarked and received by Blue Sky, Medicaid sent Blue Sky another letter on October 1, 2021, indicating that Medicaid "will not resume the recoupment . . . until the first check write in December." (Doc. 30-6 at 2). Additionally, the October 1, 2021 letter confirms that the recoupment will be at the rate of $71,653.36 per check write. (*Id.*).

4

Matt Walsh, Blue Sky's Chief Financial Officer ("CFO"), submitted an affidavit opining on the financial impact that recoupment would have on Blue Sky. Walsh states that Blue Sky receives two check writes per month from Medicaid. (Doc. 30-1 at 6, para. 31). According to Walsh, if recoupment proceeds in December 2021 at the rate of $71,653.36 per check write—a total of $143,306.72 per month—Blue Sky will be forced to operate at a net loss of $90,000 to $100,000 per month for six years until the total amount is recouped. (*Id.* at 6, para. 37). Walsh further states that "[n]o small business can afford to operate at such an enormous loss for any amount of time." (*Id.* at 6, para. 38). Additionally, Walsh asserts that, if the Commissioner proceeds with the recoupment, "Blue Sky would be forced to curtail services, lay off employees, and eventually have to cease operations in Alabama entirely." (*Id.* at 6–7, para. 38).

The Commissioner submitted a declaration in which she averred that Medicaid remains willing to provide Blue Sky an administrative fair hearing concerning the overpayments and the decision to hold Blue Sky liable for them "at the earliest available date of the Administrative Law Judge." (Doc. 32-1 at 5, paras. 14–15). The Commissioner further relayed her understanding that the Administrative Law Judge ("ALJ") had available dates of "December 9, 2020, and January 14, 2021." (*Id.* at 5, para. 15).[3] "In accordance with the standard procedures of the Alabama Medicaid Agency," if Blue Sky prevails at the conclusion of the fair hearing process, Medicaid would "take the appropriate action to

---

[3] The Court assumes that these dates contain scrivener's errors as to the years and should be December 9, 2021, and January 14, 2022.

5

release any recouped funds back" to Blue Sky. (*Id.* at 5–6, para. 16). Finally, the Commissioner asserts that once Medicaid receives the ALJ's recommendation, Medicaid's final decision "is issued promptly within an intended timeframe of thirty (30) days." (*Id.* at 6, para. 16).

## IV. DISCUSSION

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *accord Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1225 (11th Cir. 2021). "Preservation of the status quo enables the court to render a meaningful decision on the merits." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983).

Blue Sky is entitled to a preliminary injunction if it demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the injunction; (3) that the threatened injury to it outweighs the harm the injunction would cause the other litigant; and (4) that the injunction would not be adverse to the public interest. *Brown*, 4 F.4th at 1224. The parties agree that when, as here, "the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest," and thus the third and fourth elements are the same. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing *Nken v. Holder* 556 U.S. 418, 426 (2009)).

A preliminary injunction is "'not to be granted unless the movant clearly established the "burden of persuasion"' for each prong of the analysis." *America's Health Ins. Plans*

6

*v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (citation omitted).  Blue Sky, as the movant, must satisfy its burden on all four elements "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

### A.  Substantial Likelihood of Success on the Merits

In its motion, Blue Sky argues that it has a substantial likelihood of success on the merits of its Fourteenth Amendment due process, Fourth Amendment seizure, and Fifth Amendment takings and exaction claims.  At the November 17, 2021 hearing, Blue Sky clarified its position that, to be entitled to a preliminary injunction, it need only demonstrate a substantial likelihood of success on *one* of its claims, assuming the other preliminary requirements are met.  Based on the non-binding but persuasive authority from district courts in the Eleventh Circuit, as well as common sense, the Court agrees. *See Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)); *Tipsey McStumbles, LLC v. Griffin*, 2011 WL 13216946, at *3 (S.D. Ga. May 12, 2011) ("The Court need not find that Plaintiff has carried its burden of proof on all claims, only that the evidence supports a substantial likelihood of success on at least one claim which would support the preliminary injunction."); *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005) ("To obtain temporary injunctive relief, [a party] must show a substantial likelihood of success on at least one claim."), *aff'd*,

7

403 F.3d 1223 (11th Cir. 2005). At the November 17, 2021 hearing, Blue Sky averred that due process is the heart of the claim. Thus, the Court begins with due process.

A procedural due process claim requires "proof of three elements: (1) the deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayson v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The presence of state action is undisputed. As explained in the Court's Memorandum Opinion and Order denying the Commissioner's motion to dismiss, Blue Sky has a protected property interest in receiving full reimbursements for clean claims for services rendered to Medicaid patients. (Doc. 38 at 26–27). The Commissioner does not argue that Blue Sky lacks a property interest in reimbursements for clean claims. Rather, she argues that Blue Sky lacks a property interest in overpayments or funds subject to recoupment. However, the Commissioner mischaracterizes Blue Sky's asserted property interest and fails to disaggregate the reimbursements for clean claims from the alleged overpayments.

The Court now turns to the issue of inadequate process. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of" the Fourteenth Amendment's Due Process Clause. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts consider three factors in determining whether the procedural due process provided is adequate:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

8

>safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. "Where . . . a deprivation of property is authorized by an established state procedure and it is practicable for the State to provide pre-deprivation procedures, due process has been consistently held to require pre-deprivation notice and a hearing in order to reduce the possibility of a wrongful deprivation." *Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987). When the state can feasibly provide predeprivation process, "it generally must do so *regardless* of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (emphasis added). The Supreme Court has recognized exceptions to this general rule where predeprivation process is not feasible because the state official's action was random or unauthorized. *See Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 333 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Blue Sky has shown that it received no predeprivation process. Specifically, Blue Sky asserts that it did not receive notice or an opportunity to participate in the determination of the overpayments to HemaCare or on the issue of Blue Sky's alleged successor liability before the Commissioner started recoupment against Blue Sky. The Commissioner presents no evidence to the contrary. The Commissioner's evidence shows that on June 12, 2020, Medicaid transferred the recoupment from HemaCare to Blue Sky, but there is

9

no evidence (or argument) that Medicaid notified Blue Sky of the decision and the basis for it.

Considering the *Mathews* factors, the Court concludes that Blue Sky is substantially likely to succeed on its claim that it was entitled to predeprivation process. Blue Sky has a strong private interest in receiving full payments for services rendered to Medicaid patients. Second, allowing providers to present their side of the story case is "of obvious value in reaching an accurate decision." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (applying *Mathews* factors to case involving discharge of public employees). Both overpayments and determinations of successor liability will be fact-intensive inquiries that would be more accurate if providers could be heard and present their own supporting evidence predeprivation. Finally, the state's interest in immediate recoupment does not outweigh these interests, and it was feasible for the state to provide predeprivation process regarding overpayments and the issue of successor liability. With respect to overpayments, Alabama regulations already require that providers receive notice and an opportunity to respond with supporting documents before recoupment begins. *See* Ala. Admin. Code r. 560-X-33-.04(1). It is undisputed that the Commissioner gave HemaCare such notice and opportunity to respond before she started recoupments against HemaCare. The Commissioner does not argue that predeprivation process was not feasible or that the state officials' actions were random or unauthorized under *Parratt* and *Hudson*. Rather, relying on *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), the Commissioner hinges her argument that Blue Sky is unlikely to succeed on its due process

10

claim on the legal premise that Blue Sky has no actionable claim so long as postdeprivation remedies are available. As explained in the Court's Memorandum Opinion and Order denying the Commissioner's motion to dismiss, (doc. 38 at 31–33), this premise is mistaken because it ignores the general rule that predeprivation process is required, relies on a misreading of *McKinney*, and ignores cases such as *Mathews*, *Zinermon*, *Loudermill*, and *Fetner* demonstrating that, when predeprivation process is feasible, the failure to provide it violates due process.

In her response in opposition to Blue Sky's motion for preliminary injunction, the Commissioner incorporated by reference her arguments in support of her motion to dismiss, (doc. 26), including sovereign immunity, mootness, and abstention. The Court previously rejected these arguments as grounds for dismissal of Blue Sky's amended complaint. (Doc. 38). The Commissioner has not raised any arguments or proffered any evidence that warrant a different conclusion at this stage. In sum, for purposes of ruling on Blue Sky's motion for preliminary injunction, the Court finds that Blue Sky's motion to dismiss arguments do not undermine Blue Sky's substantial likelihood of success on the merits of its procedural due process claim.

Taking as true the amended complaint's factual allegations and "the uncontroverted affidavits filed in support of the motion for a preliminary injunction," *see Alabama*, 2021 WL 2668810, at *1 (quoting *Elrod*, 427 U.S. at 350 n.1), the Court finds that Blue Sky has demonstrated a substantial likelihood of success on the merits of its procedural due process claim. Because the Court has determined that Blue Sky has a substantial likelihood of

11

success on the merits of its procedural due process claim, the Court pretermits any discussion of the substantial likelihood of success on Blue Sky's Fourth and Fifth Amendment claims. *See Schiavo*, 357 F. Supp. 2d at 1384.

### B. Irreparable Injury

Blue Sky argues that it faces a likelihood of irreparable injury absent an injunction because its due process rights will continue to be violated and because the recoupment would force it to go out of business. The Commissioner counters that, except for First Amendment and right-to-privacy claims, a violation of constitutional rights does not constitute irreparable injury. The Commissioner additionally argues that Blue Sky's injury is not irreparable because Blue Sky can recover its money through the state's administrative and judicial processes.

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). The Eleventh Circuit has rejected the argument that the "violation of constitutional rights *always* constitutes irreparable harm," *Siegel v. LePore*, 234 F.3d 1176, 1177 (11th Cir. 2000) (en banc) (per curiam) (emphasis added), identifying "only two categories of constitutional claims that presumably cause irreparable injuries— certain First Amendment and right-of-privacy claims," *Brown*, 4 F.4th at 1225. The reasoning was that "chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by monetary damages; in other words, plaintiffs could not be made whole." *Ne. Fla. Chapter*, 896 F.2d at 1285.

12

Blue Sky's injuries cannot be undone through monetary remedies alone. Economic losses may be sufficient to demonstrate irreparable injury where "the loss threatens the very existence of the movant's business." *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Matt Walsh, Blue Sky's CFO, avers that if the Commissioner proceeds with the recoupment in December 2021, Blue Sky will operate at a net loss of $90,000 to $100,000 per month for six years until the total amount is recouped. Walsh further states that "[n]o small business can afford to operate at such an enormous loss for any amount of time." (Doc. 30-1 at 6, para. 38). If the recoupment proceeds, "Blue Sky would be forced to curtail services, lay off employees, and eventually have to cease operations in Alabama entirely." (*Id.* at 6–7, para. 38). And the Commissioner has already recouped a net total of $1,174,448.75 from Blue Sky's clean claims. District courts have found a likelihood of irreparable injury under similar facts in the Medicare context. *See Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 755 (N.D. Tex. 2019) (provider showed irreparable injury where Medicare's recoupment caused its gross revenue to decrease by over 60%, net revenue to decrease by 95%, forced provider to lay off employees; and would force business to shut down before ALJ hearing); *Accident, Injury & Rehab., PC v. Azar*, 336 F. Supp. 3d 599, 605–06 (D.S.C. 2018) (provider showed irreparable injury where Medicare recoupment caused loss of $6 million in gross revenue, forced termination of 24 employees, caused precipitous decrease in provider's market share, and would force closure of business if allowed to continue); *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Mathews*, 425 F.

13

Supp. 5, 8 (S.D. Fla. 1976) (hospital showed irreparable injury where Medicare's proposed recoupment rate of 15% of reimbursements would force hospital to curtail services, engage in substantial borrowing, lay off employees, and delay purchase of new or replacement equipment). In fact, Blue Sky's circumstances present an irreparable injury over and above the injuries presented in *Med-Cert Home Care* and *Accident, Injury & Rehabilitation*. In those cases, the providers undisputedly had received all the predeprivation process to which they were entitled; their due process challenges concerned the severe backlog in Medicare's postdeprivation administrative appeals process. *See Med-Cert Home Care*, 365 F. Supp. 3d at 746–47; *Accident, Injury & Rehab.*, 336 F. Supp. 3d at 603–04. And the economic injury Blue Sky faces is more dire than the injury in *Mount Sinai*, where there was no allegation or evidence that the provider would go out of business. Moreover, while the *Mount Sinai* court did not agree that the recoupment would be "catastrophic" to the hospital, the court nonetheless found that the hospital faced irreparable injury because the recoupment "would render the hospital incapable of continuing operations in a normal manner." 425 F. Supp. at 8. Blue Sky's uncontroverted affidavit and factual allegations show that, absent an injunction, it faces imminent economic loss that threatens the existence of its Alabama operations—loss that would occur despite the Commissioner denying Blue Sky the predeprivation process to which it was entitled. This evidence demonstrates a likelihood of irreparable injury.

It is no answer, as the Commissioner contends, that Blue Sky's asserted economic harms are not irreparable because Blue Sky could recover the recouped money later

14

through the state's administrative and judicial processes and appeals. True, "the 'possibility that adequate compensatory or other corrective relief will be available at a later date' weighs 'heavily against a claim of irreparable harm.'" *Brown*, 4 F.4th at 1226 (quoting *Ne. Fla. Chapter*, 896 F.2d at 1285). But the Court "must 'be especially sensitive' to irreparable injury 'where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the [rights] they should have been afforded in the first place.'" *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 504 (5th Cir. 2018) (alteration in original) (quoting *Bowen v. City of New York*, 476 U.S. 467, 484 (1986)). Here, Blue Sky claims that it was denied constitutionally mandated *predeprivation process*. That Blue Sky might later be able to recover the recouped funds is no consolation because the funds should not be recouped in the first place without predeprivation process. Thus, Blue Sky's alleged ability to recover the money later does not establish that Blue Sky faces no irreparable injury. Moreover, "[p]ost-deprivation remedies do not provide due process if pre-deprivation remedies are practicable." *Fetner*, 813 F.2d at 1186. To say Blue Sky faces no irreparable injury because it could get its money back later flips this legal proposition on its head and says that, in fact, the availability of postdeprivation remedies *can* cure a lack of predeprivation process. In sum, a finding that the Court could not enjoin the state from taking Blue Sky's money where the state failed to provide constitutionally adequate predeprivation process because Blue Sky could simply recover its money later would "gut[] any notions of predeprivation process" and effectively allow the state to "effectuate any and all deprivations under a 'shoot first, ask questions later' mentality."

15

*See Barr v. Johnson*, 777 F. App'x 298, 302 (11th Cir. 2019).[4]  The Court declines to endorse such an approach.

To the extent that it matters whether Blue Sky can recover its money later, the Court is not persuaded that such monetary relief is "adequate" because there is no evidence that Blue Sky could recover its money before it goes out of business.  While the Commissioner argues that Blue Sky would "likely" get its money back "by February or March" if it pursued and eventually prevailed at an administrative fair hearing, (doc. 33 at 20), this argument is not adequately supported by evidence.  In her affidavit, the Commissioner avers that the ALJ has available hearing dates of "December 9, 2020, and January 14, 2021," (doc. 32-1 at 5, para. 15),[5] and that once Medicaid receives the ALJ's recommendation, Medicaid's final decision "is issued promptly within an intended timeframe of thirty (30) days." (*Id.* at 6, para. 16).  But there is no evidence regarding how long it typically takes the ALJ to make a recommendation.  Additionally, the Commissioner asserts that, if Blue Sky prevails at the conclusion of the fair hearing process, Medicaid would "take the appropriate action to release any recouped funds back" to Blue Sky. (*Id.* at 5–6, para. 16).  But the Commissioner does not specify when the release of funds would occur in relation to the ALJ's recommendation or Medicaid's final decision.  And even assuming Blue Sky prevails at the fair hearing, the Commissioner's timeline also does not

---

[4] While the Court recognizes that *Barr* is an unpublished opinion, the Court finds its analysis persuasive.

[5] As noted above, the Court assumes that these dates contain scrivener's errors as to the years and should be December 9, 2021, and January 14, 2022.

16

account for an appeal by Medicaid to Alabama state court, which would extend the process for many more months, if not years.  Meanwhile, the Commissioner could continue the recoupment, forcing Blue Sky to operate at a $90,000 to $100,000 per month net loss, despite never giving Blue Sky the predeprivation process to which it was constitutionally entitled.  Based on Walsh's affidavit, and the fact that the Commissioner has already recouped $1,174,448.75 from Blue Sky, it is substantially likely that, if Blue Sky pursued its state administrative and judicial remedies, Blue Sky would at best have to curtail services and lay off employees and at worst go out of business before the matter was resolved.  Thus, even if Blue Sky ultimately prevailed, it would be a Pyrrhic victory.

Finally, the Court is not persuaded that Blue Sky delayed in bringing its motion for preliminary injunction.  The parties agree that the Commissioner paused recoupment after Blue Sky filed this lawsuit while the parties attempted to resolve the matter.  Then, on October 1, 2021, Medicaid notified Blue Sky that the settlement efforts were "unsuccessful" and that recoupments would resume with the first check write in December.  Blue Sky had no way of knowing when the Commissioner would unilaterally deem settlement negotiations unsuccessful and resume recoupment.  And Blue Sky filed its motion for preliminary injunction on October 20, 2021, less than three weeks after the October 1, 2021 letter.  Therefore, the Court finds that there was no delay which would counsel against a finding of irreparable injury.

Accordingly, the Court finds that Blue Sky has sufficiently established a likelihood of irreparable injury.

### C. Balance of Harms

The balance of harms weighs in favor of granting the preliminary injunction. If the preliminary injunction is not granted and recoupment continues during the pendency of this entire litigation, Blue Sky employees will lose their jobs, hemophilia patients will lose access to Blue Sky's services, and Blue Sky will be forced to shut down its Alabama operation before a trial on the merits can be held. Moreover, Blue Sky merely seeks to preserve the status quo that existed for approximately ten months while this litigation has been pending. As noted earlier, the purpose of a preliminary injunction is to preserve the status quo so that the court can render a meaningful decision on the merits. *See Camenisch*, 451 U.S. at 395; *Brown*, 4 F.4th at 1225. Additionally, the public has an interest in continued access to Blue Sky's services.

The Commissioner asserts that the state and the public have an interest in "holding providers accountable," and that without recouping the funds from Blue Sky, Alabama taxpayers are effectively subsidizing Blue Sky's business operations in Alabama. While the state and the public certainly have an interest in "holding providers accountable," the public also has an interest in the state affording Medicaid providers constitutionally adequate process to ensure recoupment from the appropriate providers. And by its own terms, the preliminary injunction would be temporary: it does not forever prohibit the Commissioner from recouping from Blue Sky. Moreover, it prevents the Commissioner only from seeking recoupment from *Blue Sky*. It does not prevent the Commissioner from pursuing HemaCare, the entity that undisputedly received the overpayments. Finally, the

18

Commissioner's argument that Alabama taxpayers are subsidizing Blue Sky's operations is unpersuasive. This would only be the case if Blue Sky in fact bears successor liability for the overpayments to HemaCare. And if Blue Sky does bear successor liability, recoupment will undoubtedly occur. In sum, the imminent harm to Blue Sky outweighs any harm to the Commissioner.

### D. Bond Requirement

In its motion, Blue Sky requests that the Court waive the bond requirement under Federal Rule of Civil Procedure 65(c), or alternatively that the Court require only a nominal bond. The Commissioner does not argue that Blue Sky should be required to post a bond. In its discretion, the Court concludes that the bond requirement for Blue Sky should be waived. *See BellSouth Telecomms. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (explaining that the district court "may elect to require no security at all" (citation omitted)).

### V. CONCLUSION

Because Blue Sky has shown a substantial likelihood of success on its due process claim, a likelihood of irreparable injury in the absence of an injunction, and that the equities weight in its favor, Blue Sky has met its burden of establishing entitlement to a preliminary injunction.

Accordingly, it is

ORDERED as follows:

1. Blue Sky's motion for preliminary injunction (doc. 30) is GRANTED.

19

2. The Commissioner and her agents are RESTRAINED AND ENJOINED from withholding Medicaid payments to Blue Sky to effectuate the recoupment of the alleged overpayments made to HemaCare Plus, LLC, pending the conclusion of this litigation or further Order of this Court.

3. In its discretion, the Court waives the bond requirement for Blue Sky.

4. Blue Sky's motion *in limine* (doc. 36) is GRANTED to the extent stated at the November 17, 2021 hearing.

Done this 29th day of November, 2021.

        /s/Emily C. Marks
        EMILY C. MARKS
        CHIEF UNITED STATES DISTRICT JUDGE